**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, And CHARLES A. WHOBREY, as Trustee | ) | Case No. 19-cv-4170 |
| Plaintiffs-Judgment Creditors, | ) | Judge Sharon Johnson Coleman |
| v. | ) | Magistrate Judge Daniel P. McLaughlin |
| YARUSSI CONSTRUCTION, INC. | ) | |
| Defendant-Judgment Debtor, | ) | |
| and | ) | |
| NEW ENGLAND LIFE INSURANCE COMPANY, | ) | |
| *Respondent.* | ) | |

**PLAINTIFFS-JUDGMENT CREDITORS' RESPONSE TO NEW ENGLAND LIFE INSURANCE COMPANY'S MOTION TO QUASH CITATION TO DISCOVER ASSETS**

Plaintiffs-Judgment Creditors, Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund") and Charles A. Whobrey as trustee (collectively, "Central States"), by their attorneys, respond to Respondent New England Life Insurance Company's Motion to Quash Citation to Discover Assets (Dkt. No. 76) as follows:

## I. BACKGROUND AND INTRODUCTION

On June 21, 2019, Central States filed suit against Defendant Yarussi Construction, Inc. to collect withdrawal liability, interest, and statutory damages. (Dkt. No. 1.) On October 7, 2020, the Court entered an amended judgment against Yarussi

Construction in the amount of $1,019,069.81, plus post-judgment interest.[1] (Dkt. No. 44.) That judgment remains wholly unpaid.

On March 18, 2026, Central States issued a Citation to Discover Assets to Respondent Brighthouse Financial, Inc. ("Brighthouse") (Dkt. No. 61) after obtaining information indicating that Brighthouse or one of its affiliated entities may have issued a life insurance or annuity policy to Defendant Yarussi Construction. After Brighthouse represented that it had not issued any life insurance or annuity policy to Yarussi Construction and identified New England Life Insurance Company ("New England Life") as the issuing entity, Central States investigated New England Life's authority to transact insurance business in Illinois. That investigation confirmed that New England Life is authorized by the Illinois Department of Insurance to transact insurance business in Illinois pursuant to 215 ILCS 5/109. (A true and correct copy of New England Life's Illinois Department of Insurance company profile is attached hereto as **Exhibit A**.) As required by 215 ILCS 5/112, New England Life has appointed the Illinois Director of Insurance as its statutory attorney for service of "all lawful process in any action or legal proceeding" and to agree that such service "shall be of the same force and validity as if served upon the company."

Accordingly, on April 22, 2026, Central States issued a Citation to Discover Assets ("Citation") to New England Life. (Dkt. No. 64.) On April 27, 2026, Central States personally served New England Life through its registered office in Boston,

---

[1] The judgment was amended to include mandatory statutory damages that were omitted from the original judgment.

Massachusetts. (A true and correct copy of the Affidavit of Service is attached hereto as **Exhibit B**.) On May 21, 2026, Central States also served the Citation upon the Illinois Director of Insurance. (A true and correct copy of the Affidavit of Service is attached hereto as **Exhibit C**.) The Illinois Department of Insurance thereafter accepted service on behalf of New England Life and forwarded the Citation to New England Life pursuant to the Illinois Insurance Code.

New England Life subsequently filed the present Motion to Quash, acknowledging that it issued life insurance policy number 0Y067831 to Yarussi Construction, Inc. as owner, while asserting that it is incorporated in Massachusetts, maintains its statutory home office in Massachusetts, and that the policy was issued in New York. Based on those facts, New England Life contends that this Court lacks both general and specific personal jurisdiction.

## II. <u>ARGUMENT</u>

Federal Rule of Civil Procedure 69(a)(1) provides that proceedings supplementary to and in aid of a judgment or execution "must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). Accordingly, federal courts sitting in Illinois employ Illinois supplementary-proceeding procedures, including citations to discover assets under 735 ILCS 5/2-1402 and Illinois Supreme Court Rule 277, to discover and reach property available to satisfy a federal judgment. See *Dexia Credit Local v. Rogan*, 629 F.3d 612, 622 (7th Cir. 2010); *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, No. 17 C 1973, 2021 WL 3077305, at *2 (N.D. Ill. Mar. 25, 2021).

A citation to discover assets may be directed not only to the judgment debtor, but also to a third party believed to possess property of or be indebted to the judgment debtor.

735 ILCS 5/2-1402(a); Ill. S. Ct. R. 277(a). The citation proceeding permits the judgment creditor to examine the respondent concerning the judgment debtor's assets and, where appropriate, obtain an order requiring property of the judgment debtor in the respondent's possession or control to be applied toward satisfaction of the judgment. 735 ILCS 5/2-1402(a), (c).

Because a third-party citation proceeding seeks to impose obligations upon the citation respondent, the Court must possess personal jurisdiction over that respondent. *Weinstock v. Islamic Republic of Iran*, 798 F. Supp. 3d 838, 850 (N.D. Ill. 2025); see also *Motorola Sols., Inc.*, 2021 WL 3077305, at *3. Rule 69 does not itself supply an independent basis for personal jurisdiction; rather, the Court applies the forum state's law, subject to the requirements of federal due process. *Weinstock*, 798 F. Supp. 3d at 850–51.

The due-process inquiry, however, is not limited to whether the citation respondent has sufficient minimum contacts with Illinois to establish general or specific jurisdiction. Personal jurisdiction may also rest upon the respondent's consent to suit in the forum. See *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 128, 134–40 (2023). Thus, although New England Life correctly observes that a citation respondent must be subject to the Court's personal jurisdiction, the relevant inquiry does not end with whether New England Life is "at home" in Illinois under *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014), or whether this supplementary proceeding arises from particular Illinois contacts. The Court may also exercise jurisdiction if New England Life consented to jurisdiction in Illinois.

**A. New England Life Consented to Personal Jurisdiction in Illinois by Obtaining Authority to Transact Insurance Business in the State.**

Personal jurisdiction over a foreign corporation may rest on several distinct grounds. A corporation is subject to general jurisdiction where its affiliations with the forum render it essentially "at home," ordinarily its place of incorporation and principal place of business. *Daimler*, 571 U.S. at 137; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Specific jurisdiction, by contrast, exists where the defendant has purposefully established contacts with the forum and the litigation "arise[s] out of or relate[s] to" those contacts. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). But minimum contacts are not the exclusive basis for personal jurisdiction. Because personal jurisdiction is an individual right, it may be waived, including through consent to the jurisdiction of a forum. See *Mallory*, 600 U.S. at 137–38; *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–05 (1982). Indeed, *Mallory* reaffirmed that a State may require a foreign corporation to consent to jurisdiction as a condition of obtaining the privilege of conducting business within the State. *Mallory*, 600 U.S. at 134–38.

Here, New England Life voluntarily sought and obtained authority to transact insurance business in Illinois under Article VI of the Illinois Insurance Code. See 215 ILCS 5/109, 111. Unlike corporations registered under Illinois's general corporate-registration statute, New England Life operates under the distinct statutory regime governing foreign insurers, which requires more than simply obtaining authority to transact business in the State. Illinois specifically conditions a foreign insurer's authority upon its execution of an instrument appointing the Illinois Director of Insurance as "its true and lawful attorney" upon whom "all lawful process in any action or legal proceeding against it may be served" and agreeing that such service "shall be of the same force and validity as if served upon

the company." 215 ILCS 5/112. New England Life accepted that statutory condition, appointed the Director as its attorney for service, and continues to maintain its authority to conduct insurance business in Illinois. (See Ex. A.) Therefore, New England Life consented to the exercise of personal jurisdiction in Illinois by voluntarily accepting the statutory conditions attached to its authority to transact insurance business here.

The history of Illinois's insurance statutes supports that construction. Courts applying the predecessor to Section 112 construed the statutory appointment as extending beyond disputes arising from the insurer's Illinois activities. See *Tomerlin v. London & Lancashire Indem. Co. of Am.*, 76 F. Supp. 168, 168–72 (E.D. Ill. 1944) (concluding that the statutory authorization for service was not limited to actions arising in Illinois or brought by Illinois residents); *Hunter Packing Co. v. Trinity-Universal Ins. Co.,* 76 F. Supp. 173 (E.D. Ill. 1947) (holding that a foreign insurer's statutory appointment of the Illinois Director of Insurance as its agent for service subjected it to suit in Illinois on a cause of action arising outside the State); *Walrus Mfg. Co. v. New Amsterdam Cas. Co.*, 184 F. Supp. 214, 221–24 (S.D. Ill. 1960) (recognizing Illinois's authority to require a foreign insurer to appoint an agent for service before receiving a license to conduct insurance business in the State). Other federal courts construing comparable statutory appointments have likewise recognized that a foreign corporation's appointment of a statutory agent constitutes consent to personal jurisdiction where the governing statute, as construed by the forum State, gives the appointment that scope. See *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199–1200 (8th Cir. 1990); *Holloway v. Wright & Morrissey, Inc.*, 739 F.2d 695, 697–99 (1st Cir. 1984); *Gibbons & Reed Co. v. Standard Accident Ins. Co.*, 191 F. Supp. 174, 180 (D. Utah 1960).

Those authorities are consistent with the Supreme Court's recognition that consent remains an independent basis for personal jurisdiction. See *Mallory*, 600 U.S. at 134–36. And unlike statutes that expressly limit an insurer's statutory appointment to claims arising from in-state activity or particular regulatory proceedings, Section 112 contains no such limitation: it requires the insurer to appoint the Director as its attorney for service of "all lawful process in any action or legal proceeding against it." 215 ILCS 5/112.

Accordingly, New England Life's reliance on *Daimler* and *Goodyear* does not resolve the issue. Those decisions address when a corporation's contacts with a forum, standing alone, are sufficient to support general jurisdiction; they do not eliminate jurisdiction founded upon consent. In *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), the Supreme Court established the familiar rule that due process permits a State to exercise personal jurisdiction where a defendant has sufficient "minimum contacts" with the forum such that maintaining the suit does not offend "traditional notions of fair play and substantial justice." But *International Shoe* did not displace consent as an independent basis for personal jurisdiction. As *Mallory* recently explained, *International Shoe* established an "additional road to jurisdiction" over out-of-state corporations: even where a corporation has not consented to suit, it may be subject to jurisdiction based on the "quality and nature" of its activities in the forum. *Mallory*, 600 U.S. at 138. Accordingly, *Mallory* rejected the contention that *International Shoe* and its progeny categorically displaced traditional consent-based grounds for personal jurisdiction. *Id.* at 134–40. Thus, whether New England Life is incorporated, headquartered, or otherwise "at home" in Illinois under *Daimler* is not dispositive of whether New England Life consented to jurisdiction.

Here, New England Life voluntarily obtained and continues to maintain authority to transact insurance business in Illinois under a statutory scheme requiring it to appoint the Director of Insurance as its attorney for service of "all lawful process in any action or legal proceeding against it." 215 ILCS 5/112. In light of that statutory language, Illinois's historical construction of the predecessor provision, and *Mallory's* reaffirmation that consent provides an independent constitutional basis for personal jurisdiction, New England Life consented to personal jurisdiction in Illinois and its Motion to Quash should therefore be denied.

## III. CONCLUSION

For these reasons, Central States respectfully requests that the Court deny New England Life's Motion to Quash because New England Life consented to personal jurisdiction in Illinois by obtaining and maintaining authority to transact insurance business under the Illinois Insurance Code and accepting the statutory conditions accompanying that authority.

Respectfully Submitted,

*/s/ Cara Anthaney*

Cara Anthaney
(ARDC #6304583)
Central States Funds
Law Department
8647 W. Higgins Road, 8th Floor
Chicago, IL 60631-2803
(847) 939-2367
canthane@centralstatesfunds.org

August 18, 2026

*ATTORNEY FOR PLAINTIFFS*